No. 19,334.

HARRY J. BURNS, ET AL. *v.* DISTRICT COURT
OF ARAPAHOE COUNTY, ET AL.
(356 P. [2d] 245)

Decided October 17, 1960.   Rehearing denied November 14, 1960.

Mr. J. F. LITTLE, Mr. DAVID C. LITTLE, for petitioners.

Mr. WILLIAM R. YOUNG, Mr. MYLES P. TALLMADGE, Mr. ROBERT C. TALLMADGE, for respondents.

Mr. RICHARD H. SIMON, for intervenors.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PETITIONERS have brought this original proceeding in the nature of certiorari seeking to compel the District Court of Arapahoe County to show cause why certain proceedings in that court establishing the South Suburban Metropolitan Recreation and Park District should not be declared null and void. The five petitioners allege that they are taxpaying electors and residents of Arapahoe County residing within the boundaries of the recreation district, the validity of which is questioned, and that they bring this action on behalf of themselves and all persons similarly situated.

The South Suburban Metropolitan Recreation and Park District was established pursuant to C.R.S. '53, 89-12-1, *et seq.* (Supp.). This statute was enacted in 1955 for the purpose of authorizing communities to establish metropolitan recreation districts. Section 3 of the Act authorizes the district court in a county wholly or partly within the proposed district to enter a decree establishing it. Section 4 sets forth the procedure for organizing such a district. It requires the filing with the court of a petition signed by not less than 15% of the taxpaying electors of the district. The petition must set forth the name of the proposed district, a general description of the recreation facilities to be constructed, installed or purchased within and for the district, the estimated cost of the facilities, and a general description of the boundaries of the district or the territory to be

included therein "with such certainty as to enable a property owner to determine whether or not his property is within the district." Sub-section 3 of Section 4 declares that no petition having the requisite signatures shall be declared void on account of alleged defects; the court may at any time permit the petition to be amended to conform with the facts by correcting any errors in the description of the territory or any other particular.

Protestors may obtain an election by circulating counter-petitions signed by 15% of the taxpaying electors in the proposed district. If no protest is filed (none was filed in this case), 89-12-7 provides for adjudication of questions of jurisdiction and for the court to declare the district organized, to define the boundaries thereof, to give it the designated name in the petition and designate the first board of directors. This section also sets forth provisions concerning review of the district court's adjudication, which provisions are of prime importance in this proceeding. The last paragraph of 89-12-7 provides:

"If an order be entered establishing the district, such order shall be deemed final and no appeal or writ of error shall lie therefrom. The entry of such order shall finally and conclusively establish the regular organization of said district against all persons except the state of Colorado, in an action in the nature of a writ of quo warranto, commenced by the attorney general within thirty days after said decree declaring such district organized, and not otherwise. The organization of said district shall not be directly nor collaterally questioned in any suit, action or proceeding except as expressly authorized in this section."

89-12-8 is the exclusion provision. Inasmuch as it has special importance in this proceeding, it will be quoted in full:

"*Exclusion proviso* — Any provision to the contrary notwithstanding, no tract or parcel of real estate used for manufacturing, mining, railroad or industrial purposes, which, together with the buildings, improvements,

machinery and equipment thereon situated, shall have an assessed valuation in excess of twenty-five thousand dollars at the date of filing the petition mentioned in section 89-12-4, or any tract of farm or ranch land of forty acres or more used primarily for agricultural purposes, shall be included in any district organized under this article without the written consent of the owners thereof. No personal property shall be included within any district which is situated upon real estate not included in such district. If, contrary to the provisions of this section, any such tract, parcel or personal property is included in any district, the owners thereof, on petition to the court having jurisdiction, shall be entitled to have such property excluded from the district free and clear of any contract, obligation, lien or charge to which it may or might have been liable as a part of the district."

The record discloses that the petition here was circulated as required by the statute; that at the time there were 24,975 taxpaying electors within the district and that the signatures of 4,384 of the electors were obtained. From the petition it also appears that the facilities to be purchased by the district included 273 acres of land from the United States government on the Ft. Logan reservation. Extensive improvements were to be constructed thereon at a cost estimated at $1,000,000. The boundaries of the proposed district were described by metes and bounds, and while the exclusions were not so described, they were set forth in the words of the statute generally in the following manner:

"5. No tract or parcel of real estate used for manufacturing, mining, railroad or industrial purposes, which together with the buildings, improvements, machinery and equipment thereon situated, having an assessed valuation in excess of $25,000, nor any tract of farm or range land of 40 acres or more used primarily for agricultural purposes, shall be included in the District without the written consent of the owners thereof.

* * *

"Also excluded from the proposed District shall be all the territory comprising the Arapahoe Metropolitan Recreation District, Arapahoe County, Colorado."

The petition was filed in the district court of Arapahoe County on October 5, 1959. The matter was set for hearing on October 30, 1959. The notice of the hearing was published in four editions of a weekly newspaper starting October 8, 1959, and continuing through October 29, 1959. It is further shown that additional newspaper and radio station publicity was given of the proposed recreation district and that it created a considerable public interest in the area. The published notice contained a description of the boundaries of the proposed district, but like the petition, it did not describe the exclusions in detail. Instead it contained the words of the statute and of the petition. It also failed to mention that the Arapahoe Metropolitan Recreation District and the Normandy Estates Recreation District were excluded.

Hearing was held in the district court on October 30, 1959. No protest had been received and none was made at the hearing. The trial court held the petition to be sufficient and entered a decree establishing the district. This decree described the territory and the exclusions as follows:

"All tracts or parcels of real estate used for manufacturing, mining, railroad or industrial purposes which, together with the buildings, improvements, machinery and equipment thereon situated, having an assessed valuation in excess of $25,000 owned by the following, should be and are hereby excluded from the District:"

[At this point the names of twenty-five industrial and railroad firms are set forth.]

"All tracts of farm or ranch land of forty acres or more used primarily for agricultural purposes should be and are hereby excluded from the District.

"Railroad cars of all kinds owned by miscellaneous railroad car companies will be situated on real estate not

included in the District and should be and are hereby excluded therefrom. All personal property situated on real estate not included within the District should be and is hereby excluded therefrom.

"Also excluded from the District shall be all the territory comprising the Arapahoe Metropolitan Recreation District, Arapahoe County, Colorado. Also excluded from the District shall be all territory comprising Normandy Estates Recreation District lying in Arapahoe County."

During the week of November 22, 1959 (within the 30-day period provided by the statute), petitioners through their attorney requested the Attorney General to institute quo warranto proceedings against the district. This request was refused.

The present petition was filed in this Court on December 29, 1959, and on January 14, 1960, a rule to show cause was issued.

The petitioners seek to have the proceeding declared null and void. They say that the trial court exceeded its jurisdiction:

1. By excluding the corporations which are specifically named in its decree (a) notwithstanding that these companies did not file petitions seeking exclusion, and (b) no evidence was taken as to the nature of the business or to establish the assessed valuation of the property.

2. By failing to take evidence establishing that the persons who signed the petition were qualified electors of the State of Colorado.

3. By not describing the area established in accordance with the description in the initiating petition.

4. By approving the initiating petition notwithstanding it was so vague and indefinite as to make it and the proceedings based thereon a nullity.

5. By activating the district, notwithstanding that the public notice of hearing failed to exclude the Arapahoe

Metropolitan Recreation District, which district was excluded in the original petition.

The petitioners claim to be aggrieved in a substantial way because the area which was finally made a part of the district is substantially smaller than the petitions and notices indicated it would be, in consequence of which the proportionate taxes imposed upon the persons remaining in the district, including the petitioners and all other persons similarly situated, constitutes a much heavier tax burden than they had any right to suppose would exist.

I.

The first question is whether the relief which petitioners here seek is in substance a writ of quo warranto, and if so whether the limitations of that extraordinary writ are applicable here and are determinative of this case.

The statute authorizing the creation of the district in question is specific in providing for review of the action of the district court. 89-12-7 declares that the order establishing the district shall be deemed final and that no appeal or writ of error shall lie therefrom. It further provides that the entry of such order shall finally and conclusively establish the regular organization of such district against all persons except the State of Colorado in an action in the nature of quo warranto "commenced by the Attorney General within 30 days after said decree declaring such district organized, and not otherwise. The organization of said district shall not be directly nor collaterally questioned in any suit, action or proceeding except as expressly authorized in this section."

The writ of quo warranto at common law served the function of testing title to public and corporate offices. 17 *McQuillan, Municipal Corporations,* sec. 50.02 (2d ed. 1950). It was originally a prerogative writ of the crown against one who usurped any office, franchise or liberty of the crown and was also used in the case of

non-use or long neglect of a franchise or misuse or abuse thereof. 17 *McQuillan, ibid.* That quo warranto is now recognized as the proper proceeding for attacking the legal existence of a quasi-municipal corporation is clear from our decisions. *People, ex. rel. Dunbar v. South Platte Water Conservancy District,* 139 Colo. 503, 343 P. (2d) 812; *Velasquez v. Zimmerman,* 30 Colo. 355, 70 Pac. 419; *Eldred v. Johnson,* 18 Colo. App. 384, 71 Pac. 891. The fact that the district court is the party respondent does not alter the principle.

■ Essentially the petitioners here, who were not parties in the trial court, seek to void the South Suburban Metropolitan Recreation and Park District, attacking the validity of its organization by this collateral proceeding. The statutory remedies being unavailable, they have sought to achieve the objectives normally achieved only by quo warranto by disguising the proceedings under the cloak of certiorari. Recently we called attention to the fact that the name given to an extraordinary writ is unimportant; that the substance of the relief sought determines the character of the action. *People v. Colorado High School Activities Association,* 141 Colo. 382, 349 P. (2d) 381. We are convinced that under this statute quo warranto is available only to the people on relation of the Attorney General. *Enos v. District Court,* 124 Colo. 335, 238 P. (2d) 861.

■ The only remaining question is whether the Assembly may validly limit the period within which the constitutionally guaranteed remedy is available. We conclude that such a time restriction is proper unless the period is so unreasonably short as to destroy the substance of the remedy. See *Shortt, Extraordinary Remedies,* 135-138 (1889), describing English statutes imposing time limitations on the availability of the writ. In *Mayer v. Public Utilities Commission,* 104 Colo. 619, 94 P. (2d) 125, the Court speaking through Mr. Justice Hilliard, upheld the 30-day limit and said:

"In addition to essaying to confer original jurisdiction

upon the Supreme Court in the matter of review of decisions of the Public Utilities Commission, and to preclude the district court therein — judicially nullified as stated — the General Assembly fixed a period of limitation within which application for review must be interposed; namely, thirty days. It is contended by plaintiffs in error that since the provisions of the act relative to court jurisdiction have been declared to be unconstitutional, it follows that the portion of the act concerning limitation likewise is invalid. We are not of that view. Clearly, the General Assembly was endeavoring to expedite the procedure contemplated by the entire act, and to that end the limitation relative to judicial review was made a feature of the law. That part of the act which would have conferred original jurisdiction upon the Supreme Court in the matter of judicial review, while unconstitutional, as we have seen, emphasizes, nevertheless, the purpose of the General Assembly to work expedition in the determination of questions arising out of the administration of the act. We think the limitation feature of the statute is severable from, does not depend upon, and is not related to, the provisions concerning the jurisdiction of courts. In *Fleming v. McFerson,* 94 Colo. 1, 28 P. (2d) 1013, the opinion being delivered by Mr. Justice Butler, we said: 'In *Clark v. Public Utilities Commission,* 78 Colo. 48, 239 Pac. 20, we held that the provision seeking to impose such original jurisdiction upon this court was unconstitutional and void. And in *Greeley Transportation Co. v. People,* 79 Colo. 307, 245 Pac. 720, we held that the provision attempting to deprive district courts of jurisdiction was unconstitutional and void. That left the act without any provision for a review by a court, but we held that such omission did not render the whole act void, as the district court, under the powers conferred upon it by the Constitution, has jurisdiction to review a decision of the commission.' The foregoing is a fair summary of the doctrine to be deduced from the Clark and Greeley Transportation

Company cases. See, also, *Public Utilities Commission v. City of Loveland,* 87 Colo. 556, 289 Pac. 1090. It follows — and that was the view of the trial judge — that since the petition for review was not filed in the district court within thirty days after denial of the application for rehearing by the Public Utilities Commission, judicial review of the latter's acts in this proceeding is barred."

In the case at bar, the 30-day limitation is not unreasonably short following the requirements of notice and hearing preceding the organization, and in view of the need for accelerating contract negotiations and the taking of other action looking to accomplishing the purposes of the district, free of the fear of subsequent attack of the district's legal existence.

II.

The next question is whether the present action could succeed were it to be considered as one in certiorari. Again the conclusion is that the petition is insufficient because it seeks to attack a de facto (at least) quasi-municipal corporation.

It is now settled doctrine that the validity of a de facto municipal or quasi-municipal corporation may not be questioned in an independent action by private citizens. This issue was squarely ruled upon in *Enos v. District Court,* supra, where it was declared:

"Municipal corporations of the character here involved are created only upon the authority of the state by legislative enactment, and are, if created thereunder, solely for public and not private purposes, and become an arm of the state. The right to exist as such a corporation is derived solely from the state and any action aimed to attack its legal existence after it becomes at least a de facto corporation must be confined to the state through its official representative in the absence of a statute, cannot delegate such authority."

Whether the remedy of certiorari is available to challenge the validity of judicially conducted incorporation

proceedings before de facto status is achieved by a municipal corporation is a question not before us. Cf. *Gray v. Blake,* 128 Colo. 381, 262 P. (2d) 741. In *Enos v. District Court,* supra, a prohibition was issued against the district court which had entertained an action in quo warranto brought on the relation of a private person against the town of Greenwood Village. It was ruled that the action was not one in quo warranto on the relation of the Attorney General and thus it would not lie to question the legal existence of Greenwood Village, a municipal corporation.

Since it is clear from the record before us that the recreation district here in question is at least a de facto municipal corporation organization, there is no basis in our law for these petitioners filing an original proceeding in this Court seeking to obtain a judicial declaration that the recreation district is void.

The questions in the case at bar are different from those presented in *People ex rel. Dunbar v. South Platte Water Conservancy District,* supra. In that case the proceeding was in quo warranto. It was brought within the statutory time and there it was shown that the district court decree excluded property which had been included in the petition that had been circulated in support of the district.

Being of the opinion that the remedy here sought to be invoked is not available to these petitioners, it is ordered that the rule to show cause issued herein be discharged.

Mr. Justice Frantz and Mr. Justice Hall dessent.